IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⟍⟋⟍ D.C.

05 AUG -1  PM 3: 10

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

CASSANDRA LYNN MAXWELL,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

Cv. No. 04-2734-B/P
Cr. No. 02-20032-B(G)

---

ORDER DENYING MOTION FOR EXTENSION OF TIME
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Cassandra Lynn Maxwell, Bureau of Prisons inmate registration number 18166-076, who is currently an inmate at the Federal Prison Camp in Alderson, West Virginia, filed a pro se motion pursuant to 28 U.S.C. § 2255 on September 16, 2004, along with a motion seeking an extension of time to file a supporting memorandum. She filed her memorandum on December 13, 2004 and, therefore, the motion for an extension of time is DENIED as moot. On February 25, 2005, Maxwell filed a document entitled "Amendment to 28 U.S.C. § 2255 to Vacate, Modify or Correct Sentence." On May 27, 2005, Maxwell informed the clerk of her change of address.

On February 5, 2002, a federal grand jury in the Western District of Tennessee returned a three-count indictment against Maxwell. The first count charged that, on or about August 17, 2001,

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 8-2-05

(6)

she possessed a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The second count alleged the same criminal conduct, except that it occurred on or about August 22, 2001, in violation of 21 U.S.C. § 841(a)(1). The third count also claimed a violation of 21 U.S.C. § 841(a)(1) by Maxwell involving methamphetamine occurring on or about August 28, 2001. The grand jury returned a four-count superseding indictment on June 11, 2002 that realleged the first three counts of the original indictment and added a fourth count, charging that Maxwell, on or about September 5, 2001, possessed a substance containing five or more grams of pure methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Pursuant to a written plea agreement dated August 1, 2002, Maxwell appeared before then-District Judge Julia Smith Gibbons on August 12, 2002 to plead guilty to the third count of the superseding indictment. Judge Gibbons conducted a sentencing hearing on November 1, 2002, at which time Maxwell received ninety-seven (97) months imprisonment, to be followed by a three-year period of supervised release.[1] Judgment was entered on November 5, 2002. The United States

---

[1] The first paragraph of the Memorandum of Plea Agreement provided, in pertinent part, that the Government recommended that Maxwell receive a base offense level of 32, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(4), based on a drug quantity between 500 grams and one kilogram. Maxwell received a two-point reduction, pursuant to U.S.S.G. § 2D1.1(b)(6), because she qualified for the safety-valve reduction set forth in U.S.S.G. § 5C1.2, resulting in a total offense level of 30. Despite her guilty plea, Maxwell was not afforded a reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, because of her arrest on August 18, 2002 for possession of methamphetamine. Given her criminal history level of I, the guidelines provided a sentencing range from 97-121 months. Because Maxwell qualified for the safety valve, pursuant to U.S.S.G. §
(continued...)

2

Court of Appeals for the Sixth Circuit affirmed Maxwell's sentence. United States v. Maxwell, 75 Fed. Appx. 436 (Sept. 12, 2003).

In her original § 2255 motion, which was filed on September 16, 2004, Maxwell raised the following issues:

1.  She received ineffective assistance of trial counsel, in violation of the Sixth Amendment;

2.  The prosecutors engaged in misconduct; and

3.  She received ineffective assistance of appellate counsel, in violation of the Sixth Amendment.

In her legal memorandum, which was filed on December 13, 2004, Maxwell set forth additional grounds in support of her claim that her counsel rendered ineffective assistance and asserted that the Government engaged in prosecutorial misconduct by failing to file a motion pursuant to § 5K1.1 of the United States Sentencing Guidelines. In her February 25, 2005 filing, Maxwell asserted that she is entitled to relief on the basis of the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 758 (2005). The Court will address each of these issues in turn.

In her first claim for relief, Maxwell contends that her trial counsel rendered ineffective assistance, in violation of the Sixth Amendment. The facts Maxwell set forth with respect to this issue in her original motion consisted, in their entirety, of the following:

Counsel was ineffective concerning the following:
1.  Failure to amend Pre-Sentencing report
2.  Investigation or preparation

---

[1]     (...continued)
5C1.2, she avoided the ten-year mandatory minimum sentence for a drug offense involving 50 grams or more of methamphetamine. See 21 U.S.C. § 841(b)(1)(A)(viii).

3.    Drug quantity
4.    Amending inaccurate materials
5.    Sentencing phase
6.    Counsel gave erroneous advice

Likewise, in the third issue in her original motion, Maxwell argued that her appellate counsel rendered ineffective assistance because he "argued an inappropriate defense."

As a preliminary matter, Maxwell's presentation of this issue does not comply with Rule 2(b) of the Rules Governing § 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), which requires, inter alia, that the motion "shall specify all the grounds for relief which are available to the movant and of which [she] has or, by the exercise of reasonable diligence, shall have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified."[2] Although the Sixth Circuit has not had occasion to address the pleading standards applicable to § 2255 motions, the Second Circuit has stated as follows:

> To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); accord Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard

---

[2]    Since this motion was filed, a new version of the Section 2255 Rules took effect. The provisions quoted in the text are restated, in slightly different form, in Rule 2(b)(1) & (2).

4

in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading").

Maxwell's presentation of her first and third issues does not state the facts supporting her ineffective assistance claims with sufficient specificity to permit the Court to ascertain the basis for those claims. Although the Court ordinarily would order the defendant to file an amended motion that specifies the factual basis for her motion, see Section 2255 Rules, Rule 2 advisory committee's notes to 2004 Amendments, that course is unnecessary in this case because Maxwell filed a legal memorandum on December 13, 2004 that sets forth the factual basis for her ineffective assistance claims. Accordingly, the Court will address these claims as modified by Maxwell's December 13, 2004 filing.

In her December 13, 2004 submission, Maxwell contended that her attorney rendered ineffective assistance by (a) failing to object to the indictment, which did not specify any drug quantity; (b) failing to file a notice of appeal or to argue his own ineffectiveness on direct appeal; and © urging her to plead guilty to her state cases so the sentences would run concurrent and then did not request that the sentences be concurrent.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must

show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by

erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

Maxwell first argues that her attorney rendered ineffective assistance by failing to object to the indictment, which did not allege any drug quantities (except for the fourth count of the superseding indictment, which was dismissed pursuant to the plea agreement). However, as Maxwell does not explain precisely how her attorney should have handled the issue, it is not possible to conclude that she suffered any prejudice.

The fact that an indictment does not allege a drug quantity does not deprive a district court of jurisdiction. United States v. Causey, 92 Fed. Appx. 306, 308 (6th Cir. Mar. 18, 2004) (citing United States v. Cotton, 535 U.S. 625, 630-31 (2002)). Moreover, "[t]he government's failure to allege a drug quantity [in the indictment] does not render a drug distribution indictment constitutionally infirm." United States v. Stewart, 306 F.3d 296, 310 (6th Cir. 2002). Therefore, the Sixth Circuit explained that an attorney does not render ineffective assistance by failing to file a motion to dismiss the indictment because "the only logical outcome of such a challenge would be for the government to replace the charge under 21 U.S.C. § 841 with a more specific charge, specifically alleging a drug quantity, which might expose the defendant to a higher statutory penalty range." Id. Accordingly, Maxwell was not prejudiced by her attorney's failure to file a motion to dismiss the indictment.

8

Although counsel could perhaps have raised the issue at the sentencing hearing, Maxwell has not demonstrated that she was prejudiced by counsel's failure to do so. Although Maxwell asserts that her sentence is invalid in light of the Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), that decision was not issued until after the conclusion of direct review.[3] "As a general rule, new constitutional decisions are not applied retroactively to cases that were finalized prior to a new Supreme Court decision." <u>Goode v. United States</u>, 305 F.3d 378, 383 (6th Cir. 2002); <u>see</u> <u>Schriro v. Summerlin</u>, 542 U.S. 348, 124 S. Ct. 2519, 2522-26 (2004) (finding that <u>Ring v. Arizona</u>, which held that a sentencing judge in a capital case may not find an aggravating factor necessary for imposition of the death penalty, and that the Sixth Amendment requires that those circumstances be found by a jury, does not apply retroactively to cases on collateral review); <u>Teague v. Lane</u>, 489 U.S. 288 (1989). Applying these standards, the Sixth Circuit has held that <u>Blakely</u> and <u>Booker</u> issues cannot be raised in an initial motion pursuant to 28 U.S.C. § 2255. <u>Humphress v. United States</u>, 398 F.3d 855, 860-63 (6th Cir. 2005). Accordingly, in analyzing the issue of prejudice, the Court may not consider the effect of <u>Blakely</u> and <u>Booker</u> on Maxwell's sentence.[4]

---

[3]     Maxwell also presumably would cite to <u>United States v. Booker</u>, ___ U.S. ___, 125 S. Ct. 758 (2005).

[4]     The unavailability of <u>Blakely</u> and <u>Booker</u> effectively forecloses this prisoner from establishing prejudice under the facts in this case. Although the indictment herein arose out of several drug sales by Maxwell to a confidential informant and searches of her person and residence, she was sentenced on the basis of her admission that she sold a gram and a half of methamphetamine every day for
(continued...)

9

Maxwell also cites the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), which was available at the time of her sentencing. Where, as here, an indictment does not allege a specific drug quantity, the Sixth Circuit has interpreted Apprendi as requiring that the defendant "should be sentenced under 21 U.S.C. § 841(b)(1)©, which establishes the statutory default maximum sentences and does not require as an element of the offense a specific quantity of drugs." Stewart, 306 F.3d at 310. The statutory maximum punishment for a violation of 21 U.S.C. § 841(b)(1)© is twenty years. Because Maxwell's sentence of ninety-seven (97) months is less than the statutory maximum, there was no Apprendi violation. United States v. Copeland, 304 F.3d 533, 553 (6th Cir. 2002); United States v. Leachman, 309 F.3d 377, 381-83 (6th Cir. 2002). Because Maxwell has failed to demonstrate that she was prejudiced by her attorney's failure to raise the fact that the indictment did not allege a drug quantity, this issue is without merit.[5]

Maxwell also contends that her appellate counsel failed to file a notice of appeal or to argue his own ineffectiveness on appeal. The gist of this argument is not clear, as Maxwell's trial counsel did not represent her on appeal. It is, therefore, unclear, whether the prisoner contends her appellate counsel should have argued her trial

---

[4]       (...continued)
three years. See U.S.S.G. § 1B1.3(a) (relevant conduct). Even if the indictment did specify drug quantities, the stipulated drug quantity in the plea agreement far exceeds the amount of drugs at issue in the four transactions in the indictment.

[5]       In light of the absence of a drug quantity in the indictment, the presentence report erroneously stated that the defendant was subject to the mandatory statutory minimum sentence in 21 U.S.C. § 841(b)(1)(A)(viii). However, Maxwell was not prejudiced by that error because the sentencing judge concluded that she qualified for the safety valve. See supra pp. 2-3 n.1.

counsel was ineffective or whether he should have argued that he himself was ineffective. Regardless of what Maxwell intended, this argument is without merit. Appellate counsel filed a timely notice of appeal on November 13, 2002. Moreover, the Supreme Court has held that issues concerning the performance of a federal prisoner's trial counsel should be reserved for a motion pursuant to 28 U.S.C. § 2255, where the factual record may be fully developed. See Massaro v. United States, 538 U.S. 500 (2003). Accordingly, this issue is without merit.

Maxwell also contends that the Government engaged in prosecutorial misconduct by failing to file a motion pursuant to U.S.S.G. § 5K1.1. In her December 13, 2004 filing, Maxwell asserts that the Government represented to her at some unstated time that she would receive a § 5K1.1. Maxwell also contends that she provided unspecified information that led to a major prosecution, which she does not identify, and that her arrest while awaiting sentencing should not have affected the Government's decision whether to file a § 5K1.1 motion.

The Court has no power to reduce Maxwell's sentence pursuant to § 5K1.1 unless the Government files a motion asking for a reduction. Moreover, Rule 35(b) affords the Government "a power, not a duty, to file a motion when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 185 (1992) (interpreting § 3553(e) and U.S.S.G. § 5K1.1); see In re Sealed Case No. 97-3112, 181 F.3d 128 (D.C. Cir. 1999) (en banc) (court has no authority to depart from the applicable Guideline range when the government declines to file a motion under § 3553(e) and U.S.S.G. § 5K1.1); see also United

11

States v. Marks, 244 F.3d 971, 973 n.1 (8th Cir. 2001) (Rule 35(b) should be construed in light of § 3553(e) and U.S.S.G. § 5K1.1) (collecting cases). Although prosecutorial discretion is not absolute, the circumstances under which it is subject to challenge are narrow. A federal court can consider whether a prosecutor's refusal to file a Rule 35(b) motion breaches any legally enforceable agreement with the defendant. See, e.g., Marks, 244 F.3d at 971. Moreover,

> federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of a defendant's race or religion.

Wade, 504 U.S. at 185-86.

Although an unambiguous promise to file a sentence-reduction motion may be subject to specific performance, "[w]here . . . the government has reserved its discretion, the AUSA's refusal to file a substantial assistance motion should be treated as any other discretionary decision made by a prosecutor." Marks, 244 F.3d at 975; see also United States v. Evans, No. 95-5144, 1996 WL 167484, at *5 (10th Cir. Apr. 10, 1996) ("The motion and record before us show no indication that the government ever agreed to file a Rule 35(b) motion in exchange for Evans' later assistance, obviating the need for an inquiry into the government's good faith.").

In this case, Maxwell has come forward with no evidence that she entered into a legally enforceable agreement with the Government. Her written plea agreement does not mention the possibility of a § 5K1.1 motion, and she admitted at her change of plea hearing that no

12

promises and representations had been made as to what her sentence would be. 08/01/02 Tr. at 9. At the sentencing hearing, the prosecutor made the following statements about the Government's effort to work with Maxwell:

> Ms. Maxwell was, she represented that she would cooperate with us, and we were working with her. As Ms. Skahan said, problems began to develop, and then we had the situation which she was arrested on the 18th, and she was arrested for really the same thing that she had pleaded guilty to. So we have a situation where someone is originally prosecuted for selling methamphetamine, pled guilty to that, and then still does it. And of course at that point the cooperation arrangement and the prospect of [a] substantial assistance reduction were off the table because we just can't continue to do business with someone under these circumstances where they are going to continue to be involved in criminal conduct.
>
> And these requirements were spelled out on the front end of trying to work with her. And, obviously, they are almost things that really shouldn't have to be said because it is obvious that we are not going to enter into a cooperation arrangement with someone who is going to continue to be involved in criminal activity.

11/01/02 Tr. at 6-7.

The vague assertions in Maxwell's motion are insufficient to demonstrate that the Government entered into a legally enforceable cooperation agreement and that Maxwell fully performed her end of the deal. Moreover, Maxwell has not presented any basis for concluding that the Government's failure to file a § 5K1.1 motion due to her continued criminal conduct was the result of bad faith. Accordingly, this issue is without merit.

In her February 25, 2005 filing, Maxwell argued that she is entitled to relief on the basis of Booker. As previously stated, however, see supra p. 9, Booker issues cannot be raised in § 2255

motions where the defendant's conviction became final prior to the issuance of that decision.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Rules Governing Section 2255 Proceedings in the United States District Courts. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, her motion is DENIED.

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved

14

in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[6]

---

[6]   By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those
(continued...)

15

In this case, the defendant's claims are clearly lacking in substantive merit for the reasons previously stated and, therefore, she cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[7] the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. Hereford, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part that:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's

---

[6]    (...continued)
appeals deserving of attention from those that plainly do not." Id.

[7]    Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

16

belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this defendant is not taken in good faith, and she may not proceed on appeal _in forma pauperis_.

IT IS SO ORDERED this __31^st__ day of July, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

17

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 6 in case 2:04-CV-02734 was distributed by fax, mail, or direct printing on August 2, 2005 to the parties listed.

Thomas A. Colthurst
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Cassandra Maxwell
FPC ALDERSON
18166-076
Box A
Alderson, WV 24910

Honorable J. Breen
US DISTRICT COURT